### ESSEX THEATRES COMPANY *vs.* COMMONWEALTH.

Suffolk.    October 16, 1928. — November 28, 1928.

Present: CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Tax*, Excise on corporation: motion picture .corporation.  *Corporation*, Taxation.  *Theatre.*

A domestic corporation, the gross receipts of which for a certain year were derived chiefly from money received from the sale of tickets to the public conferring on the purchasers thereof a license to view exhibitions of motion pictures and vaudeville and to hear music accompanying such exhibitions, which were carried out by the use of tangible personalty, commonly used by theatres or motion picture houses, in real estate occupied by the corporation as a tenant under a lease in writing; and derived in part from rents received from subleases of parts of such real estate not occupied by the corporation's theatre, was subject for that year to the provisions of § 32A, added to G. L. c. 63 by St. 1923, c. 424, § 2, imposing a certain excise upon domestic corporations which derive their profits principally "from the ownership, sale, rental or use of real estate or tangible personal property."

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on October 11, 1926, and afterwards amended, for the abatement of an excise levied on the petitioner under § 32A, added to G. L. c. 63 by St. 1923, c. 424, § 2.

The petition is described in the opinion.  The respondent demurred.  The demurrer was heard by *Sanderson*, J., by whose order there were entered an interlocutory decree sustaining the demurrer and a final decree dismissing the petition.  The petitioner appealed.

The case was submitted on briefs.

*Lee M. Friedman & P. D. Turner*, for the petitioner.

*J. E. Warner*, Attorney General, & *R. A. Cutter*, Assistant Attorney General, for the Commonwealth.

PIERCE, J.    This is an appeal from an interlocutory decree sustaining the demurrer of the respondent and from a final decree ordering that the petition be dismissed.  The peti-

tioner is a domestic corporation with an authorized capital stock of $1,000, consisting of one hundred shares of a par value of $10 each. The corporation is authorized to engage in the business of producing and presenting to the public all forms of entertainment which may be produced in a theatre or motion picture house with necessary incidental powers. It may also "lease, sub-let, buy, sell or own such real estate and personal property or interest therein as may be necessary or desirable for the conduct of its business"; and may "subscribe for, purchase, invest in, hold, own, assign, pledge or otherwise dispose of shares of capital stock, bonds, mortgages, debentures, notes, and other securities, obligations, contracts and evidences of indebtedness of corporations organized in this Commonwealth or in any other State."

In compliance with G. L. c. 63, § 35, it filed an excise tax return in April, 1925. This return shows the facts with reference to the income received by the petitioner during the calendar year 1924. The petitioner alleges that during the year 1924 it was engaged in the "exhibition of motion pictures at its several theatres; that it owned no real estate in connection with its business or for its corporate purposes but did occupy in connection with its business and for its corporate purposes," but not otherwise, during that year "certain buildings in several cities within the Commonwealth of Massachusetts as tenant under a written lease, in which buildings its several theatres were located."

In the petition the business of the petitioner is alleged to be conducted as follows: "The exhibition of motion picture films upon a screen is carried out by means of an electrically operated projector machine, the projector machine, the films, and the screen being tangible personal property. Music of an orchestra or of an organ or both is supplied by the petitioner during the exhibition of the motion pictures, and vaudeville entertainment is usually furnished in addition to the pictures. Tickets are sold by the petitioner to the general public entitling the purchaser to occupy a seat in the theatre where the films are exhibited, to view the exhibition of pictures and vaudeville, and to hear the music accompanying the exhibit. A theatre building is used for exhibitions

by the petitioner. The building contains seats, a stage, and the theatrical and musical equipment, usual to a theatre or moving picture house."

The petitioner's total gross income from all sources for the year ending December 31, 1924, was $530,885.38, as shown in an itemized statement filed with the return. In this statement an item of $516,834.01 was the amount received for admissions and an item of $12,350.72 was for rents received from the subleases of parts of the buildings not occupied by the theatres. The petitioner originally paid to the Commonwealth as its excise tax for the year 1925 the sum of $181.74, in accordance with the provision of G. L. c. 63, § 32, as amended by St. 1923, c. 424, § 1, which reads: "Except as otherwise provided in sections thirty-four and thirty-four A, every domestic business corporation shall pay annually, with respect to the carrying on or doing of business by it, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of the fair cash value of all the shares constituting its capital stock on the first day of April when the return called for by section thirty-five is due: (1) An amount equal to five dollars per thousand upon the value of its corporate excess. (2) An amount equal to two and one half per cent of that part of its net income, as defined in this chapter, which is derived from business carried on within the Commonwealth."

The commissioner subsequently levied and assessed upon the petitioner a total tax of $259.20, which included $181.74 previously paid by the petitioner, the additional assessment of $77.46 being based upon the contention of the commissioner that the petitioner was subject to the provision of § 32A, added to G. L. c. 63 by St. 1923, c. 424, § 2, and imposing a minimum excise of one twentieth of one per cent of the gross receipts of certain corporations. Said § 32A reads: "Every domestic business corporation deriving its profits principally from the ownership, sale, rental or use of real estate or tangible personal property shall pay annually, with respect to the carrying on or doing of business by it, a total excise under this chapter not less in amount than one

twentieth of one per cent of said corporation's gross receipts from business assignable to this Commonwealth as defined in clause six of section thirty-eight." The petitioner paid on May 12, 1926, the tax levied and assessed upon it, under protest, and states in its petition for abatement: " . . . your petitioner . . . claims that it is not subject to the provisions of said Section 32A of Chapter 63 of the General Laws and that the levy and exaction from it of said tax was unlawful in so far as said tax exceeded the amount of the tax due and owing from your petitioner to the Commonwealth of Massachusetts as determined under provisions of Section 32 of Chapter 63 of the General Laws upon the basis of the said return filed by your petitioner with the Commissioner of Corporations, to wit: unlawful in the sum of seventy-seven dollars and forty-six cents ($77.46) together with the interest thereon paid by your petitioner on account of the tax for 1925."

The only question is, Did the petitioner during the calendar year 1924, derive its profits principally from the ownership, sale, rental or use of real estate or from tangible personal property?

At the theatre of the petitioner the tickets sold to the general public entitled the purchaser under a revocable license to occupy a seat in the theatre where motion picture films are exhibited, to view the exhibition of pictures and vaudeville, and to hear the music accompanying the exhibit. *Burton* v. *Scherpf*, 1 Allen, 133. *Opinion of the Justices*, 247 Mass. 589, 596. *Wood* v. *Leadbitter*, 13 M. & W. 838. It is undoubtedly true that one who purchases a ticket does so with the expectation that he will be permitted to attend the performance from its beginning to its end, but the ticket confers no legal right on the purchaser to remain at the place of exhibition after he is requested by the petitioner or by its agents to withdraw. *Burton* v. *Scherpf, supra.* People pay for the entertainment and recreation which the petitioner announces publicly will be given, and, paying, have a right of action in contract if such promises are not substantially fulfilled or the contract be otherwise broken. The petitioner is able to furnish the promised entertainment

through the use of the place of exhibition in conjunction with the use of an electrically operated projector machine, the films and the screen. The thing of primary importance in the success of the exhibition and the consequent attraction to the theatre of the public is the presence of the projector machine, properly equipped and operated, with films which are pleasing or instructive, or both pleasing and instructive. The money which is received, and that which is expected to be received, from the sale of tickets make the exhibition a financial possibility. And the money so received is as much profits derived from the use of tangible personal property as is money received from the sale of articles produced by the use of tangible personal property. The sale of tickets and the money received therefor are a part of the business, and a means by which the real estate and tangible personal property used in moving picture exhibitions are made available to the public.

*Decrees affirmed.*