COMMONWEALTH *vs*. CHARLES TRIPPI.

Suffolk.    May 23, 1929. — June 29, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Homicide*, Criminal intent, Self-defence.    *Evidence*, Competency, Of criminal intent.    *Practice, Criminal*, Requests, rulings and instructions.

The rule, applied at the trial of indictments for crime, that an infant between the ages of seven and fourteen is *prima facie* incapable of forming a criminal intent, refers to the physical age of the child and does not extend to one physically beyond the age of fourteen years, even though he be of a mental age of about thirteen years.

Criminal responsibility does not depend upon the mental age of the defendant nor upon the question, whether the mind of the prisoner is above or below that of the ideal or of the average or of the normal man, but upon the question, whether the defendant knows the difference between right and wrong, can understand the relation which he bears to others and which others bear to him, and has knowledge of the nature of his act so as to be able to perceive its true character and consequences to himself and to others.

At the trial of an indictment for murder against a man twenty-two years of age, it was proper for the trial judge to rule that the mere establishment of the fact that the defendant had a mental age of a child of thirteen would not entitle him to the benefit of a presumption that he was incapable of forming a criminal intent, stating that such ruling did not preclude the offer and admission of evidence tending to show that the defendant's deficiency of intellect in any way interfered with his criminal responsibility, sanity or power to premeditate.

At the trial of an indictment for murder, it appeared that the defendant, a prisoner at the State prison, had been attempting to escape, and had shot one of the guards.  The trial judge gave adequate and accurate instructions on the issues of premeditation, motive and deliberation. The defendant asked for and the judge refused a ruling: In determining whether or not the defendant killed the guard after deliberation and reflection, that is, with deliberately premeditated malice aforethought, the jury should consider and weigh the probable result of such act in connection with his alleged plan to escape.  *Held*, that the refusal was proper because adequate instructions had been given and the judge was not required to refer to fragmentary parts of the evidence.

The right of self-defence does not accrue to a person until he has availed himself of all proper means in his power to decline the combat.

At the trial above described, there was an entire absence of evidence that the defendant had by any overt act or words abandoned his attempt to escape or had given the deceased any reasonable ground to believe that he intended to abandon his attempt to escape or had exhausted all

reasonable means of declining combat. The defendant asked for rulings in substance that, if the defendant had abandoned his attempt to escape, and was, or had reasonable cause to believe he was, in danger of, or threatened with, great bodily harm or death, he had a right to and was justified in using necessary force to defend himself even to the extent of taking life. The rulings were refused. *Held*, that no error was committed, as the evidence presented no issue to which the requested rulings were applicable.

INDICTMENT, found and returned on November 14, 1928, charging murder.

In the Superior Court, the indictment was tried before *Gray*, J. Material evidence and rulings at the trial are stated in the opinion. The defendant on January 23, 1929, was found guilty of murder in the first degree, and appealed, assigning errors which were filed on February 8, 1929, and are described in the opinion.

*M. H. Shanly*, (*M. L. Glazer* with him,) for the defendant.

*F. T. Doyle*, Assistant District Attorney, (*J. A. Sullivan*, Assistant District Attorney, with him,) for the Commonwealth.

CROSBY, J. On November 11, 1928, the defendant, twenty-two years of age, was serving a sentence of fifteen to eighteen years in the Massachusetts State prison. Armed with a loaded revolver and thirty or forty extra cartridges, in an attempt to escape from the prison he shot and killed Frederick Pfluger, a guard of the institution. The defendant was indicted and convicted of murder in the first degree.

The first assignment of error relates to the ruling of the trial judge respecting certain questions propounded to an expert in psychiatry. Counsel for the defendant asked the following question: "Will you tell us, doctor, what you found, what conclusions or opinion you arrived at in regard to the mental age of this defendant as a result of your psychometric tests?" The question was excluded in that form, the defendant excepted and the judge said, "I am not precluding you from asking the doctor his opinion as to the sanity or criminal capacity of this defendant in any form that you may have, but on nothing so far introduced are you entitled to the question in the form in which you put it."

Counsel for the defendant then asked the witness, "Now, did you arrive at any conclusion, or did you form an opinion as to the mental age of this defendant?" The judge then said, "I will exclude your question, unless accompanied by some offer of proof from a qualified expert that the answer to the question would throw some light on his sanity or criminal capacity, his capacity to commit a crime." "When you put the question, Mr. Shanly, do you mean the mental age as determined by the socalled psychometric tests referred to in your previous question?" Counsel for the defendant replied, "Exactly." The judge then excluded the question and the defendant made the following offer of proof: "The defendant expects to prove by this witness, and in answer to this question, that the defendant Trippi, in his opinion, has a mental age of about thirteen years . . . as determined by the psychometric tests. That is offered on the ground of the defendant's mental capacity to premeditate, deliberate, and on his capacity to form and carry along an intent for an appreciable time. It is offered on the further ground as entitling the defendant to an instruction from the court if the jury find that the defendant has a mental age of about thirteen years old . . . as determined by this same test, the psychometric test, he is entitled to an instruction that he is presumed to be incapable of forming a criminal intent." The judge then made the following ruling: "So far as the second part is concerned, I now rule that the showing, if it can be shown, that the defendant was mentally thirteen years of age, as established by the psychometric test, does not entitle him to the benefit of the presumption claimed by counsel. Having made that ruling, I exclude this evidence on that ground . . . So far as the first ground of the admission of this evidence is concerned, I will permit you to inquire of the doctor generally and particularly as to the mental condition of this defendant in so far as his capacity to commit crime is concerned, in so far as his power to premeditate is concerned, and will permit the doctor to give his reasons for the opinion if the opinion is in any way favorable to the defendant, or, if it is unfavorable, if counsel desires it. In the absence of any evidence that a mental age

of thirteen, which is the offer of proof, in any degree, or in any way, interferes with this defendant's criminal responsibility, insanity, or power to premeditate, I rule that the precise question is not competent and therefore I exclude it." At the end of the conference at the bench the judge added, "Do you understand my ruling? That it is not to interfere in any way with your asking the doctor a professional and expert opinion as to the sanity of the defendant or as to his mental condition determined by all of his examinations?" Counsel for the defendant replied, "Yes. That is all, Doctor."

It is the contention of the defendant that since an infant between the ages of seven and fourteen is *prima facie* presumed to be incapable of forming a criminal intent, *Commonwealth* v. *Mead*, 10 Allen, 398, *State* v. *Learnard*, 41 Vt. 585, 589, *Angelo* v. *People*, 96 Ill. 209, 210–213, evidence that the defendant's mental age was about thirteen years should have been admitted, and that, if admitted, this presumption would be applicable. This rebuttable presumption, however, refers to the physical age of the child and does not extend to one beyond the age of fourteen years. *State* v. *Schilling*, 95 N. J. L. 145, 146–148. *People* v. *Day*, 199 Cal. 78, 87. *State* v. *Kelsie*, 93 Vt. 450, 452. If the decision in *State* v. *Richards*, 39 Conn. 591, is not in accord with the view herein expressed, we cannot follow it.

"Criminal responsibility does not depend upon the mental age of the defendant nor upon the question whether the mind of the prisoner is above or below that of the ideal or of the average or of the normal man, but upon the question, whether the defendant knows the difference between right and wrong, can understand the relation which he bears to others and which others bear to him, and has knowledge of the nature of his act so as to be able to perceive its true character and consequences to himself and to others." *Commonwealth* v. *Stewart*, 255 Mass. 9, 13. *Commonwealth* v. *Rogers*, 7 Met. 500. *Commonwealth* v. *Johnson*, 188 Mass. 382, 387, 388. *Commonwealth* v. *Cooper*, 219 Mass. 1, 5. It was said in *Commonwealth* v. *Devereaux*, 257 Mass. 391, at page 397, "Constitutional or other inferiority is not the test of crim-

inal responsibility." The trial judge rightly ruled that the mere establishment of the fact that the defendant had a mental age of a child of thirteen would not entitle him to the benefit of the presumption that he was incapable of forming a criminal intent. He stated that his ruling did not preclude the offer and admission of evidence tending to show that the defendant's deficiency of intellect in any way interfered with his criminal responsibility, insanity or power to pre-meditate.

The second assignment of error relates to the refusal of the trial judge to give the defendant's fourteenth request for instructions which is as follows: "In determining whether or not the defendant killed Pfluger after deliberation and reflec-tion, that is with deliberately premeditated malice afore-thought, the jury should consider and weigh the probable result of such act in connection with his alleged plan to es-cape." The trial judge gave adequate and accurate instruc-tions on the issues of premeditation, motive and deliberation. If the request be considered as directing the jury's attention to the futility of the defendant's plan to escape, no exception lies, because the judge was not required to refer to frag-mentary parts of the evidence; the case was for the consid-eration of the jury on all the evidence. *Jaquith* v. *Rogers,* 179 Mass. 192, 197. *Commonwealth* v. *Johnson, supra,* page 387. *Commonwealth* v. *Feci,* 235 Mass. 562, 571.

The third assignment of error relates to the refusal of the judge to give the defendant's requests numbered 24, 25 and 26, which read as follows: (24) "If the jury find that at the time of the shooting of the deceased Pfluger the defendant Trippi had abandoned his attempt to escape and that he was in danger of grave bodily harm or death, he had the right to defend himself using such force as was necessary even to the extent of taking life." (25) "If the jury find that the de-fendant Trippi at any time prior to the shooting of the de-ceased Pfluger had abandoned his attempt to escape and that after such abandonment he found himself threatened with great bodily harm or death he would be justified in using necessary force to defend himself even to the extent of taking life." (26) "If the jury find that the defendant Trippi at any

prior time to the shooting of the deceased Pfluger had abandoned his attempt to escape and that after such abandonment he had reasonable cause to believe that he was threatened with great bodily harm or death, even though such danger did not in fact exist, he would be justified in using necessary force to defend himself even to the extent of taking life."

It is manifest that none of these requests could properly have been given. In his confession the defendant said that when the officers came up to get him they pulled out their guns, that he pulled out his gun and said, "All right, fellows, put them up." Instead of putting up their hands the defendant stated that they fired at him and that he fired back, and that if the officers had put up their hands he would have just made them keep quiet until he got over the cupola. In his testimony he denied that he was still intending to escape at this time. He testified that when the officers cornered him he intended to get up, walk toward them, and submit to arrest. He further testified that before he ordered the officers to put up their hands Officer Connolley had shot at him twice, that he was thrown into a panic and was unconscious of what he did and was at that time in a confused state of mind. The trial judge correctly charged the jury in substance that this evidence did not show that the defendant shot in self-defence. The right of self-defence does not accrue to a person "until he has availed himself of all proper means in his power to decline the combat." *Commonwealth* v. *Peterson,* 257 Mass. 473, 478. There is an entire absence of evidence that the defendant had by any overt act or words abandoned his attempt to escape or had given the deceased any reasonable ground to believe that he (the defendant) intended to abandon his attempt to escape, or had exhausted all reasonable means of declining combat. The judge was not required to give requests for instructions, however correct they might be as abstract principles of law, where, as here, the evidence presented no issue to which they were applicable. *Commonwealth* v. *Crowley,* 168 Mass. 121, 129. *Commonwealth* v. *Hassan,* 235 Mass. 26, 32. *Commonwealth* v. *Feci, supra. Topping* v. *Eastern Massachusetts Street Railway,* 252 Mass. 270, 274. *Wallace, petitioner,* 265 Mass. 101, 107.

*Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, and cases cited.

A careful examination of the entire evidence fails to show any error of law.  The rights of the defendant in all respects were fully protected.  It results that the entry must be

*Judgment on the verdict.*