## COMMONWEALTH *v.* MILLER F. CLARK.

Suffolk.    October 10, 1935. — November 13, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Practice, Criminal,* Opening statement by district attorney, Argument by district attorney, Confession, Requests, rulings and instructions, Verdict. *Evidence,* Competency, Photograph, Admissions and confessions, Presumptions and burden of proof, Of sanity. *Homicide. Insane Person.*

At a trial for murder, the presiding judge properly might allow the district attorney in his opening to state that the defendant had confessed his guilt, without first hearing and passing upon the preliminary facts making the confession competent evidence, unless the judge then had reason to doubt the admissibility of the confession.

At a trial for murder, a photograph of the body of the slain person as it was found was not rendered inadmissible because it might excite prejudice against the defendant.

At a trial for murder, it was not improper for the district attorney to argue to the jury that they ought to have as much courage in dealing with the case as did certain witnesses friendly to the defendant, in testifying against him.

At a trial for murder, no error was shown in the admission in evidence of the defendant's confession without preliminary proof of his sanity, if up to that time no question of his sanity had been raised and none was then raised.

No error was disclosed in the refusal of the judge at the trial of an indictment to give requested rulings covered in substance by the charge.

At the trial of an indictment for murder, there was no error in the refusal of a requested ruling as to the result if the defendant's "criminal responsibility was impaired."

One may be convicted of murder in the first degree though he did not have perfect and complete appreciation of the difference between right and wrong at the time of the crime.

A requested ruling as to the effect of irresistible impulse upon criminal responsibility need not be given at the trial of an indictment if there is no evidence of such irresistible impulse.

The rational probability that any particular man is sane is evidence of sanity on the part of one accused of crime, which may be found by the jury to outweigh evidence that he is insane.

That a verdict of guilty of murder in the first degree was returned in nineteen minutes after the jury had retired, was no proof that the evidence had not been considered sufficiently.

INDICTMENT for murder, found and returned on January 15, 1935.

The indictment was tried in the Superior Court before *Gibbs,* J. The defendant was found guilty and filed an appeal with assignments of error.·

*H. C. Cutter,* for the defendant.

*F. T. Doyle,* Assistant District Attorney, for the Commonwealth.

LUMMUS, J. The defendant, a man of forty-four years, was convicted, in the first degree, of the murder of a girl eighteen years old, named Ethel Zuckerman, who was a clerk in a bakery shop. Her body was found in the shop about ten o'clock in the evening of December 20, 1933, with the face and head bruised, the jaws broken, and six knife wounds in the throat, in one of which the knife remained. There was evidence that the murderer stole $8 out of the money drawer at the time of the murder.

The first assignment of error attacks the action of the judge in permitting the district attorney in his opening to state that the defendant, when questioned by police officers on December 22, 1934, confessed that he killed the girl because of jealousy. The defendant excepted on the ground that the facts making the confession competent had not then been proved. As a general rule, counsel is free to state in his opening anything that he expects to be able to prove by evidence. *Commonwealth* v. *Howard,* 205 Mass. 128, 146. If the judge has reason to think that facts which counsel wish to state cannot be proved by admissible evidence, he may direct counsel to omit them in opening the case. *Posell* v. *Herscovitz,* 237 Mass. 513. In the present case no reason why the confession would not be admissible was stated by counsel for the defendant. There was no error in refusing to restrict the opening. *Commonwealth* v. *Mercier,* 257 Mass. 353, 365.

The second assignment of error assails the admission of photographs of the body as it was found. They were competent, and were not rendered inadmissible by the possibility that they might excite an unreasoning prejudice against the defendant. There is nothing to show that they did so in fact. This point is fully covered by authority.

*Commonwealth* v. *Robertson*, 162 Mass. 90, 97. *Commonwealth* v. *Osman*, 284 Mass. 421, 423, and cases cited.

The fourth assignment of error relates to the action of the judge in permitting the district attorney to argue that jurors ought to have as much courage as three women witnesses who gave testimony against the defendant although they were friendly with him. This argument was not improper. Both judge and counsel may properly impress upon the jury their duty to act with courage as well as impartiality. *Commonwealth* v. *Brownell*, 145 Mass. 319. *Commonwealth* v. *Mercier*, 257 Mass. 353, 361, 362, 377. *Commonwealth* v. *Millen*, 289 Mass. 441, 484. See also *Commonwealth* v. *Dyer*, 243 Mass. 472, 507, 508; *O'Neill* v. *Ross*, 250 Mass. 92, 96.

The remaining assignments of error relate to the defence of insanity. As to the third, the cross-examinations of witnesses for the Commonwealth tended to show that the defence was to be a denial of the killing. Until after the Commonwealth had rested, no suggestion of insanity had been introduced into the case by assertion, question or answer, except that a police officer, in narrating his conversation with the defendant, testified that the defendant said that "he was getting medical treatment at the City Hospital, that his brain was affected" and "that his brain was not just as it should be." This fell far short of evidence that he was insane to such a degree that he could not be convicted of crime (*Commonwealth* v. *Stewart*, 255 Mass. 9, 13, 14; 44 Am. L. R. 579), or that his admissions and confessions could not be received in evidence. *Commonwealth* v. *Zelenski*, 287 Mass. 125. Compare *People* v. *Shroyer*, 336 Ill. 324. Every man, in the absence of evidence to the contrary, is presumed to be sane and responsible. *Commonwealth* v. *Heath*, 11 Gray, 303. *Clifford* v. *Taylor*, 204 Mass. 358, 361. *Commonwealth* v. *Belenski*, 276 Mass. 35, 45. There was no evidence that the confessions were procured by force, threats or promises. The presumption was that they were competent. *Commonwealth* v. *Congdon*, 265 Mass. 166, 173, 174. *Commonwealth* v. *Buck*, 285 Mass.

41, 47. There is nothing in the general exceptions of the defendant to the reception in evidence of confessions and admissions made by him.

The defendant was called as a witness by his counsel. He answered many questions as to his life and work and habits. In direct examination he testified that he killed the girl with a knife. Soon afterwards he testified that he did not kill her, but that a cigarette given him by a police sergeant had made him confess to the officers that he did.

An expert in mental diseases, called by the defendant, testified, from an examination of the defendant and from hearing him testify, that the defendant is, and was at the time of the killing, a low-grade moron, with an intelligence quotient of fifty, afflicted with syphilis of the brain and spinal cord, mentally diseased, and "medically insane," although able to distinguish between right and wrong "to a certain extent," and able to appreciate the fact that, if convicted, he might die in the electric chair. Expert witnesses called by the Commonwealth testified from extended examinations that the defendant is, and was at the time of the killing, the victim of an arrested case of syphilis of the brain and spinal cord, legally responsible and able to distinguish right from wrong, although one of them qualified the last statement by adding "to a limited extent."

The fifth assignment of error is to the failure of the judge to give the following requested instructions relating to the defence of insanity: "13. If the defendant was so defective mentally at the time of and as to the alleged crime as to be unable to restrain himself from committing the crime alleged, even though he did know the difference between right and wrong, he cannot be found guilty of murder in the first degree. 14. If the defendant at the time of the commission of the crime was not of sufficient mental capacity to have an evil motive or malice for the killing or to hold that motive in his mind for an appreciable length of time, then he is not guilty of murder in the first degree. 15. If the defendant's criminal responsibility was impaired at the time of the crime, he cannot be found guilty of murder in the first degree. 16. If the defendant's criminal

responsibility was impaired at the time of the alleged crime, then it cannot be said that he was legally sane at the time of the crime and the verdict should be not guilty by reason of insanity. 17. If the defendant by reason of a mental disease at the time of the alleged crime could not distinguish between right and wrong to any extent, no matter how limited, then he cannot be found guilty of murder in the first degree. 18. If the defendant by reason of a mental disease at the time of the alleged crime could distinguish between right and wrong only to a limited extent, then he cannot be found guilty of murder in the first degree."

In charging the jury, the judge said, not with perfect accuracy, that "between the medical view of insanity and the legal definition of insanity there is a marked difference." For the legal definition of mental responsibility for crime he read to the jury the first two paragraphs and also the fourth paragraph of the charge of Shaw, C.J., in *Commonwealth* v. *Rogers*, 7 Met. 500. He continued: "If Miller Clark at the time that he killed Ethel Zuckerman, if you find that he did kill Ethel Zuckerman, knew, or had the mental capacity of knowing, that the act that he was doing was wrong, that he was liable to punishment for it, and realized the consequences of it to Ethel Zuckerman, then . . . he is legally responsible for his act. . . . It never has been held . . . that intellectual inferiority, or even partial insanity, is the test to be applied to determine the guilt of a defendant or his legal responsibility for any crime he may have committed. . . . the point you are to decide is whether, at the moment of the killing, the defendant had sufficient mental capacity to know the act was wrong, to realize what his duty to society was, and what the consequences of his act might be to him and to others."

The fourteenth request, that one who lacks mental capacity for "malice" (*Commonwealth* v. *Chance*, 174 Mass. 245, 252), and the seventeenth request, that one who is utterly lacking in power to distinguish between right and wrong, cannot be convicted of murder in the first degree, were given in substance, not only in the judge's own words but also by

the quotation from *Commonwealth* v. *Rogers,* 7 Met. 500, 501, 502. See *People* v. *Schmidt,* 216 N. Y. 324. The fifteenth and sixteenth requests are difficult to understand, and instructions in their terms without further explanation would have only mystified and confused the jury. Wherever the line of criminal responsibility of persons of low mentality may be drawn, one is either responsible or irresponsible. No definite idea is conveyed by speaking of "impaired" responsibility. *Commonwealth* v. *Cooper,* 219 Mass. 1, 5. The requests were not adapted to raise the question whether one may be responsible for crime in general and yet not have capacity for "deliberately premeditated malice aforethought" under G. L. (Ter. Ed.) c. 265, § 1. See *Commonwealth* v. *Cooper,* 219 Mass. 1, 5; *People* v. *Moran,* 249 N. Y. 179; *Commonwealth* v. *Taylor,* 263 Mass. 356, 363; *Commonwealth* v. *Soaris,* 275 Mass. 291, 299. The eighteenth request required perfect and complete appreciation of the difference between right and wrong in order to warrant a conviction of murder in the first degree. Even among sane men there are many grades of ethical understanding. One who can distinguish between right and wrong "to a limited extent" may be convicted of murder in the first degree, which may but does not always require deliberately premeditated malice aforethought. *Commonwealth* v. *Gilbert,* 165 Mass. 45, 58, 59. *Commonwealth* v. *Cooper,* 219 Mass. 1, 5. *Commonwealth* v. *Stewart,* 255 Mass. 9, 13, 14; 44 A. L. R. 579. *Commonwealth* v. *Devereaux,* 257 Mass. 391, 397. *Commonwealth* v. *Trippi,* 268 Mass. 227, 230. *Commonwealth* v. *Belenski,* 276 Mass. 35, 48, 50. *People* v. *Finley,* 38 Mich. 482. *People* v. *Marquis,* 344 Ill. 261, 267.

The thirteenth request was intended to present the doctrine of irresistible impulse, the doctrine that one capable of distinguishing between right and wrong cannot be convicted of crime if his act was the result of irresistible impulse produced by mental defect or disease. No instruction was required on this subject in this case where there was no evidence for the jury that the deed was in fact the result of such irresistible impulse. *Carr* v. *State,* 96 Ga. 284, 289, 290. *Commonwealth* v. *De Marzo,* 223 Penn. St. 573. *Com-*

*monwealth* v. *Cavalier*, 284 Penn. St. 311, 321. *State* v. *Peel*, 23 Mont. 358, 371, 372. *Hurst* v. *State*, 40 Tex. Cr. App. 378, 386. *Chriswell* v. *State*, 171 Ark. 255, 259. *Cline* v. *Commonwealth*, 248 Ky. 609, 613. A judge need not, and ordinarily should not, though requested, charge the jury with reference to a principle of law which has no bearing upon any facts which the jury can find from the evidence. *Commonwealth* v. *Trippi*, 268 Mass. 227, 232. *Commonwealth* v. *Soaris*, 275 Mass. 291, 299. *Partridge* v. *United Elastic Corp.* 288 Mass. 138, 144. *Stager* v. *G. E. Lothrop Theatres Co.* 291 Mass. 464, 465. *Davis* v. *United States*, 165 U. S. 373, 378, 379.

The sixth assignment of error relates to the refusal of the judge to instruct the jury that on all the evidence the defendant could not be found guilty of murder in the first degree. If this point was properly taken by a request without a motion (Rule 71 of the Superior Court [1932]), it cannot be sustained. The admissions and confessions of the defendant, with other corroborative testimony, constituted ample evidence that he killed the girl. From the medical evidence recited it could be found that the defendant was mentally responsible. The jurors saw the defendant on the stand, and could form an opinion as to his mentality. *Commonwealth* v. *Devereaux*, 257 Mass. 391, 395. Moreover, although the burden of proof is on the Commonwealth to prove the defendant mentally responsible for crime (*Commonwealth* v. *Johnson*, 188 Mass. 382, 388; *Commonwealth* v. *Belenski*, 276 Mass. 35, 50; compare *Commonwealth* v. *Eddy*, 7 Gray, 583), the fact that a great majority of men are sane, and the probability that any particular man is sane, may be deemed by a jury to outweigh, in evidential value, testimony that he is insane. This is the effect of what was said in *Clifford* v. *Taylor*, 204 Mass. 358, 361, *Commonwealth* v. *Spencer*, 212 Mass. 438, 453, and *Taylor* v. *Creeley*, 257 Mass. 21, 29, although the form of expression may be criticised on the ground that in truth it is not, as stated in those cases, the presumption of sanity that may be weighed as evidence, but rather the rational probability on which the presumption rests. *Duggan* v. *Bay State Street Railway*,

230 Mass. 370, 378.  *Claffey* v. *Fenelon,* 263 Mass. 427, 433. *Brown* v. *Henderson,* 285 Mass. 192, 195, 196.  See also *Commonwealth* v. *Eddy,* 7 Gray, 583, 584, last paragraph. Compare *State* v. *Green,* 78 Utah, 580; *People* v. *Cochran,* 313 Ill. 508, 523; *State* v. *Pike,* 49 N. H. 399, 442, 443.

The seventh assignment of error was to the taking of the verdict.  The argument is, that the fact that only nineteen minutes elapsed between the time when the jury left the court room and the time when they returned to give their verdict, showed that they did not give the evidence adequate consideration.  The case had been tried fully, and the jury could not help receiving impressions as the case proceeded.  Evidently they had little doubt as to the facts. It was not necessary to spend time in discussing what no one doubted.

*Judgment on the verdict.*